UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
EAN SOLEY, : 18-CV-377 (ARR) (SJB)
:
        *Plaintiff*, : NOT FOR ELECTRONIC
: OR PRINT PUBLICATION
  -against- :
:
COUNTY OF NASSAU, THE NASSAU COUNTY : **OPINION & ORDER**
POLICE DEPARTMENT, DETECTIVE RHUBENS :
TOUSSAINT shield # 1192, P.O. OMAR D. GALAN :
shield # 3660, DETECTIVE STEPHEN BELLAMY, P.O. X
SEAN MCNEIL, THE OFFICE OF THE NASSAU
COUNTY DISTRICT ATTORNEY and D.J.
ROSENBAUM (former Assistant District Attorney in her
individual and official capacity) and JOHN DOES 1-10, in
their individual and official capacity,

        *Defendants*.

--------------------------------------------------------------------

ROSS, United States District Judge:

    After spending two years in jail on charges that were dismissed before trial, plaintiff, Ean Soley, brought this action for money damages against Nassau County, the Nassau County Police Department ("NCPD"), NCPD Detectives Rhubens Toussaint and Stephen Bellamy, NCPD Officers Omar D. Galan and Sean McNeil, the Nassau County District Attorney's Office, former Nassau County Assistant District Attorney ("ADA") D.J. Rosenbaum, and John Does 1 through 10. The complaint alleges multiple constitutional and state-law violations by defendants, including, as relevant here, that Ms. Rosenbaum maliciously prosecuted Mr. Soley in the absence of probable cause and kept him incarcerated by fabricating evidence, making false statements to the court, withholding *Brady* evidence, and suborning perjury. Ms. Rosenbaum now moves for judgment on the pleadings, arguing that she is entitled to absolute immunity on the claims asserted

1

against her in her individual capacity, that the claims asserted against her in her official capacity are duplicative of the claims asserted against Nassau County, and that she is entitled to Eleventh Amendment immunity on the official-capacity claims. Because Ms. Rosenbaum is immune from suit on Mr. Soley's claims, her motion is granted and the claims against her are dismissed.

## BACKGROUND

*Factual Background*[1]

On August 23, 2014, Mr. Soley was arrested for allegedly violating a Family Court Order of Protection following a report from Cassandra Desir, Mr. Soley's former partner and the mother of his son, that he had destroyed her home and attempted to strangle her. Second Am. Compl. ¶¶ 26, 35 ("Compl."), ECF No. 18. During the arrest, the NCPD seized Mr. Soley's cell phone and front door key. *See id.* ¶ 26. Mr. Soley was charged with, *inter alia*, burglary in the second degree, criminal mischief in the third and fourth degrees, and criminal contempt in the first degree. *Id.* On August 26, 2014, Ms. Desir appeared in court and submitted a letter stating that Mr. Soley had not broken into her home and that she did not wish to proceed with her complaint against him (the "Desir recantation letter"). *Id.* ¶ 27. The presiding judge, the district attorney, and Mr. Soley's then-counsel each received a copy of the letter. *Id.* Mr. Soley was released on bail, but his cell phone and house key were not returned. *Id.* ¶¶ 27, 49.

In a sworn deposition taken in December 2014, Ms. Desir stated that on December 15, 2014, she had been at home on the phone with Jennifer Bragg, an advocate with the District Attorney's Office, when she received a call from Mr. Soley. *Id.* ¶¶ 42–46. Ms. Desir answered the call in conference mode, so that Ms. Bragg could hear the conversation. *Id.* ¶ 43. Ms. Desir alleged

---

[1] At the pleadings stage, I must accept as true the facts pleaded by Mr. Soley and draw all reasonable inferences in his favor. *See Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020).

that on the call Mr. Soley said that Ms. Desir "was not going to take his son away from him" and threatened to kill her. *Id.* ¶ 44. On December 23, 2014, Ms. Desir appears to have again reported that Mr. Soley attempted to contact and threaten her. *See id.* ¶ 28. Mr. Soley was arrested on the same day and released on bail on January 5, 2015. *Id.*

On January 9, 2015, Mr. Soley received the following voicemail from defendant Detective Toussaint: "[W]e know you did it, if you don't come down and turn yourself in, I'm going to come there, kick your door in, handcuff you, drag you out and embarrass you in front of your neighbors." *Id.* ¶ 29. Having tried and failed to contact his attorney, Mr. Soley arrived at the NCPD precinct on the morning of January 13, 2015, and asked to speak with Detective Toussaint. *Id.* ¶¶ 30–31. After several hours, defendant Officer Galan appeared, handcuffed Mr. Soley, and placed him under arrest. *Id.* ¶¶ 31–33. It was not until his arraignment two days later that Mr. Soley learned that he had been arrested for allegedly breaking into Ms. Desir's house on January 9. *See id.* ¶¶ 34–35. Mr. Soley was charged with burglary in the first degree, criminal possession of a weapon in the third degree, "[a]ggravated [f]amily [o]ffense," and criminal contempt in the first degree. *Id.* ¶ 35.

On February 9, 2015, a grand jury indicted Mr. Soley on eighteen charges from the August 2014, December 2014, and January 2015 arrests. *Id.* ¶ 39. Ms. Rosenbaum, then an ADA for Nassau County, presented Ms. Desir's testimony to the grand jury. *Id.* ¶ 42. In her testimony, Ms. Desir stated that on December 15, Mr. Soley had called her at work using a private number and said, "I wish you would drop dead, the B word," and threatened to "kill [her] and kill the baby." *Id.* ¶¶ 44, 46. After his indictment, the court increased Mr. Soley's bail to $1,500,000. *Id.* ¶ 48. Mr. Soley was unable to pay this amount and therefore remained incarcerated. *See id.* ¶ 55.

On March 4, 2015, Ms. Rosenbaum served defense counsel with voluntary disclosures. *Id.* ¶ 51. These disclosures did not include a copy of Ms. Desir's recantation letter. *Id.* Ms. Rosenbaum

did not mention the cell phone seized from Mr. Soley during his August 2014 arrest, nor did she inform defense counsel that she planned to use any property seized from Mr. Soley as evidence at trial. *Id.*

On June 30, 2015, Mr. Soley's counsel requested copies of any statements by Mr. Soley, any property seized from him, any *Brady* material, any inconsistent witness statements, and the names of any witnesses who had changed their testimony. *See id.* ¶ 52. On July 6, Ms. Rosenbaum responded, *inter alia*, that there was "no additional information in the Office of the District Attorney responsive to the demand, including *Brady* or *Giglio* material." *Id.* ¶ 53. Again, she did not mention Mr. Soley's phone, his house key, or Ms. Desir's recantation letter. *Id.* On August 10, Mr. Soley's defense counsel filed a motion to dismiss and to compel the production of any *Brady* material, arguing that the prosecutors *were* in possession of such material and that, if the police possessed the requested material, Ms. Rosenbaum had a duty to investigate whether they did. *Id.* ¶ 54. In her opposition to the motion, Ms. Rosenbaum acknowledged that the police had possession of plaintiff's phone and produced a copy of Ms. Desir's letter. *Id.* ¶¶ 56–57. She then re-affirmed that her office did not possess "any *Brady* or exculpatory material." *Id.* ¶ 58. On September 22, 2015, the court denied Mr. Soley's motion to dismiss but identified specific information that should be disclosed under *Brady* and its progeny. *See id.* ¶ 60.

Since Ms. Rosenbaum made no further disclosures, Mr. Soley's counsel continued to request *Brady* material. A letter from counsel dated April 27, 2016, went unanswered. *Id.* ¶ 61. After counsel sent another letter on May 9, 2016, threatening to seek sanctions, Ms. Rosenbaum responded with copies of photos and 911 calls that she had previously disclosed but did not address whether she had asked the police department if they possessed any relevant evidence. *Id.* ¶¶ 61, 63. After Mr. Soley's counsel filed another motion to compel and/or preclude, Ms. Rosenbaum

insisted to the court that she had already turned over all discoverable information, evidence, and documents. *Id.* ¶ 65.

Following an evidentiary hearing on December 2, 2016, the court instructed Ms. Rosenbaum to produce Mr. Soley's phone by December 12. *Id.* ¶¶ 66–67. On December 12, Ms. Rosenbaum appeared without the phone and reported to the court the phone would not "power up" and that she did not intend to use the phone as evidence at trial. *Id.* ¶ 68. Although the court then ordered Ms. Rosenbaum to produce the phone in court on January 9, 2017, she did not do so. *Id.* ¶¶ 68–69. On January 17, Ms. Rosenbaum again appeared without the phone but reported that the police had been able to turn on the phone and extract evidence from it. *Id.* ¶¶ 69–70. She produced discs with phone call records that showed that, from August 4 to August 22, 2014, Ms. Desir and Mr. Soley had exchanged 266 calls and conversed over the phone for approximately forty-five minutes per day. *Id.* ¶¶ 70, 72. On January 18, Ms. Rosenbaum finally produced the phone in court. *Id.* ¶ 71. Thereafter, a specialist hired by Mr. Soley's counsel discovered that evidence was deleted from Mr. Soley's phone while it was in police custody. *Id.* ¶ 75. Based on the deletions, Mr. Soley's counsel secured a reduction of Mr. Soley's bail—over Ms. Rosenbaum's objection—from $1.5 million to $100,000. *See id.* ¶¶ 75–77.

On January 26, 2017, Ms. Rosenbaum notified Mr. Soley's counsel that, on the previous day, Ms. Desir had revealed to her that she had been in a relationship with Mr. Soley in the days leading up to his August 23, 2014, arrest and that during that time Mr. Soley had been in her home, with her permission, and "babysitting" their son. *Id.* ¶¶ 79–80. Based in part on this information, Mr. Soley successfully applied for another bail reduction—which Ms. Rosenbaum again opposed—and he was released after two years of detention. *Id.* ¶¶ 81–82.

Mr. Soley's counsel then moved to dismiss the case on the ground that Ms. Rosenbaum had

5

engaged in illegal and unethical conduct. *Id.* ¶¶ 83–84. On April 19, 2017, the court held that the Nassau County District Attorney's Office had "acted improperly in failing to determine and disclose any information from the subject phone held in the possession of the State for more than eighteen (18) months." *Id.* ¶ 85. Finding that Mr. Soley's case was therefore prejudiced by Ms. Rosenbaum's conduct, the court directed that Ms. Rosenbaum be removed from the case and reported her to the Grievance Committee of the Tenth Judicial District. *Id.* ¶¶ 85–86. Ms. Rosenbaum "was subsequently asked to resign her position." *Id.* ¶ 87.

In October 2017, the charges against Mr. Soley were again presented to a grand jury. *Id.* ¶ 88. This time, the prosecutor presented to the grand jury Ms. Desir's inconsistent statements, Ms. Desir's recantation letter, and the evidence from Mr. Soley's cell phone. *Id.* The grand jury returned a "no true bill." *Id.* On October 3, all eighteen charges and the Order of Protection against Mr. Soley were dismissed. *Id.* ¶ 89. By then, Mr. Soley had lost his parental rights; he continues to litigate a case in Family Court to regain these rights. *Id.* ¶ 90.

*Procedural Background*

On January 19, 2018, Mr. Soley filed suit against defendants, bringing constitutional claims pursuant to section 1983 and assorted state law claims. Compl., ECF No. 1. On December 8, 2021, Ms. Rosenbaum moved for judgment on the pleadings, arguing that she is entitled to absolute prosecutorial immunity on the conduct she is alleged to have committed. Mot. for J. on Pleadings, ECF No. 105; Mem. L. in Supp. Motion ("Mem."), ECF No. 107.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the pleadings once the pleadings are closed "but early enough not to delay trial." Fed. R. Civ. P. 12(c). Dismissal under Rule 12(c) "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v.*

6

*M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (citation omitted). A Rule 12(c) motion can prevail, therefore, only when, accepting all "well-pleaded factual allegations" in the complaint as true and "constru[ing] all reasonable inferences" from the complaint "in the light most favorable to the plaintiff," the claim does not "plausibly give rise to an entitlement to relief." *Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020) (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), then quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc)).

## DISCUSSION

Mr. Soley alleges eight acts taken by Ms. Rosenbaum that caused him injury: (1) eliciting false testimony from Ms. Desir before the grand jury; (2) improperly withholding *Brady* material, including Mr. Soley's cell phone and Ms. Desir's recantation letter; (3) falsely representing to the court that no *Brady* material existed; (4) failing to notify defense counsel that she intended to use property seized from plaintiff as evidence; (5) deleting evidence from Mr. Soley's cell phone; (6) requesting an unreasonably high amount of bail; (7) opposing Mr. Soley's motions to reduce his bail; and (8) conspiring with the other defendants to wrongfully arrest and falsely imprison Mr. Soley. *See* Compl. ¶¶ 39–81, 93–101, 107–09, 112–14, 117. Ms. Rosenbaum contends that insofar as she is sued in her individual capacity, she is entitled to absolute prosecutorial immunity from suit on claims arising out of the acts alleged by plaintiff. Mem. 8–15. Insofar as she is sued in her official capacity, she argues both that these claims are duplicative of the claims against Nassau County and that she is entitled to Eleventh Amendment immunity. *Id.* at 18–19. As discussed below, controlling precedent dictates that Ms. Rosenbaum is entitled to immunity from suit on all claims against her.

7

I. **Defendant Rosenbaum is Immune from Suit on the Claims Brought Against Her in Her Individual Capacity.**

Claims asserted against a current or former governmental official in her individual capacity seek monetary relief directly from her, rather than from her government employer. Courts immunize these defendants from suit in their individual capacities, however, when the suit concerns their exercise of the discretionary functions of their official positions. *See Imbler v. Pachtman*, 424 U.S. 409, 423–24 (1976); *Harlow v. Fitzgerald*, 457 U.S. 800, 816–18 (1982). Here, Ms. Rosenbaum is entitled to such immunity.

A. **Governing Standard**

A prosecutor is eligible for absolute immunity to protect not only her "duty . . . to exercise [her] best judgment both in deciding which suits to bring and in conducting them in court," but also "[t]he public trust of the prosecutor's office." *Imbler*, 424 U.S. at 424. If entitled to absolute immunity, a prosecutor is protected from claims for monetary relief brought under both section 1983 and state law. *Shmueli v. City of N.Y.*, 424 F.3d 231, 238 (2d Cir. 2005).

"To determine whether [a prosecutor] enjoys absolute immunity[,] [courts] take a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Simon v. City of N.Y.*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)); *see also Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) ("[I]mmunity is not a function of the prosecutor's *title*."). A prosecutor is entitled to absolute immunity for "acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of h[er] role as an advocate for the [s]tate." *Malik v. City of N.Y.*, 841 F. App'x 281, 284 (2d Cir. 2021) (quotation marks and alteration omitted) (quoting *Buckley*, 509 U.S. at 273); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 69 (2d Cir. 2019) ("Absolute immunity bars § 1983 suits against prosecutors for their role 'in initiating a prosecution and in

8

presenting the [s]tate's case.'" (quoting *Imbler*, 424 U.S. at 431)). These acts include a prosecutor's evaluating evidence, preparing witnesses, and deciding whether to present a case to the grand jury and whether to dismiss an indictment. *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012); *Simon*, 727 F.3d at 171.

A prosecutor is not entitled to immunity, however, when she "functions outside" her role as "an advocate for the People" and "an officer of the court," and instead performs "administrative duties and those investigatory functions that do not relate to an advocate's [role]." *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995); *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler*, 424 U.S. at 431 n.33); *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Buckley*, 509 U.S. at 273); *cf. Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) ("Absolute prosecutorial immunity . . . extends only so far as is necessary either to protect the prosecutor against retaliation and hindsight challenges with respect to h[er] prosecutorial decisions or to guarantee the effective functioning of the judicial process."). While "[t]he line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw," the Supreme Court has suggested that "a prosecutor's conduct prior to the establishment of probable cause should be considered investigative." *Zahrey v. Coffey*, 221 F.3d 342, 347 & n.2 (2d Cir. 2000); *see also Buckley*, 509 U.S. at 273–74 ("A prosecutor neither is, nor should consider [her]self to be, an advocate before [s]he has probable cause to have anyone arrested."). For example, where a prosecutor engages in functions that have "historically and by precedent been regarded as the work of [the] police," *Simon*, 727 F.3d at 172, such as taking "investigative steps" to "gather evidence" or "searching for the clues and corroboration that might lead to a recommendation for an arrest," *Giraldo*, 694 F.3d at 166 (internal citation and quotation marks omitted), she is not entitled to absolute immunity from suit for that conduct. *Simon*, 727 F.3d at 172.

A prosecutor seeking absolute prosecutorial immunity bears the burden of showing that the immunity applies. *Simon*, 727 F.3d at 172; *Warney*, 587 F.3d at 121 ("[T]o establish immunity, the ultimate question is whether the prosecutor[] ha[s] carried [her] burden of establishing that [she] was] functioning as [an] advocate[] when [she] engaged in the challenged conduct." (internal citation and quotation marks omitted)). "[W]hen it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law." *Hill*, 45 F.3d at 663.

Once the court determines that a prosecutor was acting as an advocate, the prosecutor's "motivation in performing [these] advocative functions is irrelevant to the applicability of absolute immunity," *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004), as is the availability of "preferable alternatives to the actions taken," *Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001). As long as the nature of the complained-of actions is prosecutorial, "absolute immunity applies to protect the prosecutor even in the face of a complaint's allegation of malicious or corrupt intent behind the acts." *Giraldo*, 694 F.3d at 166; *see also Buckley*, 509 U.S. at 271–72 (noting that whether the conduct was lawful and the harm it may have caused are irrelevant to whether absolute immunity applies); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1150 (2d Cir. 1995) ("[T]he extent of [prosecutorial] immunity always depends upon the nature of the activity in question, and not upon how wrongly the particular actors may have performed that activity in a specific instance.").

**B. Defendant Rosenbaum's Alleged Conduct Was Within Her Prosecutorial Function.**

Ms. Rosenbaum moves for dismissal of the claims brought against her in her individual capacity on the ground that those claims are based on conduct that was part of her core prosecutorial function. Mem. 8–15, 17–18. Plaintiff argues that Ms. Rosenbaum is ineligible for

10

absolute immunity on these claims because her conduct "had no justification in law and w[as] instead gratuitous, illegal, improper, and unrelated to any activity in which judicial officers may appropriately and legally engage in the advocacy of public interest."[2] Pl.'s Opp'n to Mot. J. on Pleadings 1, 10 ("Opp'n"), ECF No. 108. While I sympathize with Mr. Soley's argument, I find that Ms. Rosenbaum has met her burden to prove that she is entitled to absolute immunity from suit regarding the acts alleged by Mr. Soley.

### 1. Suborning Perjury

Plaintiff alleges that Ms. Rosenbaum knowingly elicited false testimony from Ms. Desir before the grand jury regarding Mr. Soley's alleged threats. *See* Compl. ¶¶ 42–46, 108. A prosecutor's "alleged presentation of false evidence to the grand jury 'lies at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.'" *Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 380 (S.D.N.Y. 2021) (alteration omitted) (quoting *Bernard*, 356 F.3d at 503) (collecting cases); *compare Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (explaining that "efforts to 'control the presentation of [a] witness' testimony' are within the function of the prosecutor" (quoting *Buckley*, 509 U.S. at 272–73)) *with Giraldo*, 694 F.3d at 165 (explaining that prosecutors are not entitled to immunity for "fabricating evidence during the *preliminary investigation* of a crime" (emphasis added)). Ms. Rosenbaum is therefore immune from suit regarding Mr. Soley's claims against her in her individual capacity insofar as they are based on

---

[2] Mr. Soley also challenges absolute immunity on policy grounds, highlighting precisely what has long made courts squeamish about the doctrine, *see, e.g.*, *Imbler*, 424 U.S. at 427 (acknowledging that absolute immunity "leave[s] the genuinely wronged . . . without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty"); *Pinaud*, 52 F.3d at 1147 ("Especially in cases . . . in which a plaintiff plausibly alleges disgraceful behavior by district attorneys, the application of this doctrine is more than disquieting."). *See* Pl.'s Opp'n to Mot. for J. on Pleadings 16–17, ECF No. 108. Though Mr. Soley's concerns are well-taken, I am bound by well-established caselaw in this area.

her allegedly eliciting false testimony before the grand jury.

### 2. Failure to Investigate

Plaintiff also alleges that Ms. Rosenbaum failed to investigate his protests that he was not the alleged perpetrator. Compl. ¶ 101. There are no allegations in the complaint that Ms. Rosenbaum had any involvement in the pre-indictment investigation of Mr. Soley: the complaint first mentions Ms. Rosenbaum's involvement in the case following Mr. Soley's arrest. Courts within the Second Circuit have consistently found that a prosecutor's failure to sufficiently investigate a case post-arrest is protected by absolute immunity. *See, e.g.*, *Schnitter v. City of Rochester*, 931 F. Supp. 2d 469, 474 (W.D.N.Y. 2013) ("[C]ast[ing] this [*Brady*] claim [as] a failure to conduct a thorough investigation . . . does not render the complained-of conduct 'investigatory' in nature [because] [a]t bottom, [the] plaintiff's claim rests upon the prosecutor's decision to charge [the] plaintiff with a crime[,] . . . a quintessentially prosecutorial task."); *Robinson v. Rome*, No. 11-CV-1411 (NGG), 2011 WL 1541044, at *3 (E.D.N.Y. Apr. 20, 2011) (finding that the assistant district attorneys' alleged failure to investigate the plaintiff's case was "clearly prosecutorial" (internal quotation marks omitted)); *Crews v. Cnty. of Nassau*, No. 06-CV-2610 (JFB), 2007 WL 4591325, at *14 (E.D.N.Y. Dec. 27, 2007) ("[P]rosecutor defendants are entitled to absolute immunity for any failure to investigate [the plaintiff's] alibis."). Ms. Rosenbaum is therefore entitled to absolute immunity for allegedly failing to investigate Mr. Soley's claim of innocence.

### 3. Bail Advocacy

Plaintiff further alleges that, despite the weak evidence against him, Ms. Rosenbaum advocated for an unreasonably high bail and opposed reducing his bail, keeping him incarcerated for two years. Compl. ¶¶ 36, 48, 50, 55, 77, 81, 101, 104. Because New York Criminal Procedure

12

Law "expressly provides for the district attorney's involvement in a determination to order bail or a subsequent review of a bail order," *Pinaud v. Cnty. of Suffolk*, 798 F. Supp. 913, 918 (E.D.N.Y. 1992), *aff'd in part, remanded in part*, 52 F.3d 1139 (2d Cir. 1995) (citing N.Y. Crim. Proc. Law § 530.40(4)), a prosecutor's advocacy before the court regarding a defendant's bail falls within her advocate's role. *See Giraldo*, 694 F.3d at 167 (listing bail as a "legal decision[] at the core of the prosecutorial function"); *Pinaud*, 52 F.3d at 1149 ("[A]ctions in connection with a bail application are best understood as components of the initiation and presentation of a prosecution, and therefore protected by absolute immunity."). Prosecutors are therefore entitled to absolute immunity for their bail requests, even if these requests are unsubstantiated. *See, e.g.*, *Pinaud*, 52 F.3d at 1149–50 (granting absolute immunity to prosecutors who allegedly, *inter alia*, improperly sought to increase the plaintiff's bail). Ms. Rosenbaum's advocacy to the court regarding Mr. Soley's bail is therefore absolutely immune from suit.

    *4. Suppression of Evidence and Making Knowingly False Statements to the Court*[3]

Plaintiff also alleges that Ms. Rosenbaum suppressed evidence—including Ms. Desir's recantation letter and evidence from Mr. Soley's cell phone—that should have been turned over to the defense under *Brady*. Compl. ¶¶ 61, 63, 67–73, 94, 100, 117. Additionally, he alleges that Ms. Rosenbaum falsely stated to the court that she had satisfied her obligations under *Brady* and its progeny. *Id.* ¶¶ 53, 58–59, 65–66. The Second Circuit has instructed that an ADA is entitled to absolute immunity for alleged *Brady* violations. *Hill*, 45 F.3d at 664; *see also Bermudez v. City of N.Y.*, No. 11-CV-750 (LAP), 2013 WL 593791, at *6 (S.D.N.Y. Feb. 14, 2013) ("[S]uppressing

---

[3] Mr. Soley relatedly asserts, in conclusory fashion, that Ms. Rosenbaum was complicit in the deletion of evidence from his cell phone. *See* Compl. ¶ 95, ECF No. 18. However, Mr. Soley pleads that the cell phone was in the custody of the Nassau County Police Department only, *see id.* ¶¶ 56, 70, 73, and does not allege that Ms. Rosenbaum had any actual involvement in the destruction of this evidence. Mr. Soley's own pleading thus renders it unnecessary to consider this allegation.

13

*Brady* material[] is clearly protected by the doctrine of absolute immunity." (collecting cases)). Ms. Rosenbaum's claimed suppression of *Brady* material is therefore absolutely immune from suit.

5. *Conspiracy*

Plaintiff further alleges that Ms. Rosenbaum conspired with the other individual defendants to commit the acts violating his rights. Compl. ¶¶ 112–13. A conspiracy claim also falls within the ambit of absolute prosecutorial immunity. *See Dory*, 25 F.3d at 83 (holding that absolute immunity applies to "allegedly conspiring to present false evidence at a criminal trial"); *Shmueli*, 424 F.3d at 237–38 ("These principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy."); *Hill*, 45 F.3d at 661 (holding that a prosecutor was absolutely immune from suit for "conspiring to present falsified evidence to . . . a grand jury"). Ms. Rosenbaum is therefore immune from suit on this claim.[4]

6. *Acting Without Colorable Claim of Authority*

Plaintiff finally alleges that Ms. Rosenbaum is not entitled to absolute immunity from suit on the above conduct because she acted "outside the scope of [her] jurisdiction and without authorization of law," Compl. ¶ 123. *See* Opp'n 7. It is true that even where a prosecutor is acting as an advocate, she is not entitled to absolute immunity if she "acts without any colorable claim of authority." *Bernard*, 356 F.3d at 504 (citation and quotation marks omitted). This is a narrow exception, however. It applies only where the prosecution was initiated without any statutory authority or where the prosecutor "intertwined [her] exercise of authorized prosecutorial discretion with other, unauthorized conduct." *Id.* This occurs, for example, where the prosecutor conditions

---

[4] Plaintiff further alleges that each of above acts violated his constitutional rights because they violated policies and procedures of the Nassau County District Attorney's Office. *See* Compl. ¶ 109. However, "a breach of departmental policy does not by itself constitute a constitutional violation." *Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 489 (S.D.N.Y. 2010).

14

a charging decision on a bribe or sexual favors. *Id.* Such a narrow exception has no application here. Here, Ms. Rosenbaum had a statutory basis in New York law for charging Mr. Soley with acts including burglary, violation of the Order of Protection, and threats of violence, *see, e.g.*, N.Y. Penal Law §§ 140.30(3) (burglary), 215.51(b)(i) (criminal contempt), 240.75 (aggravated family offense), and there is no allegation that her charging decisions were "intertwined" with unauthorized conduct. Therefore, the exception does not apply, and Ms. Rosenbaum is absolutely immune from suit in her individual capacity.

## II. Defendant Rosenbaum Is Immune from Suit on the Claims Brought Against Her in Her Official Capacity.

Ms. Rosenbaum moves for judgment on the pleadings on the claims brought against her in her official capacity, arguing that these claims should be dismissed as duplicative of the municipal claims against Nassau County and as protected by Eleventh Amendment immunity. Mem. 18–19. Plaintiff does not proffer a response to either argument. Ms. Rosenbaum's motion is granted.

Courts treat claims asserted against a current or former governmental official in her official capacity as claims asserted against her government employer. *See D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) ("When a defendant is sued in [her] official capacity, we treat the suit as one against the 'entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985))). "Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (collecting cases); *see also Canzoneri v. Inc. Vill. of Rockville Ctr.*, 986 F. Supp. 2d 194, 205 (E.D.N.Y. 2013) (dismissing official capacity claims against individual defendants as duplicative of claims against the municipality); *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 699–700 (S.D.N.Y. 2011) (dismissing official capacity claims as redundant).

Where the official-capacity claim is not redundant, a prosecutor is nevertheless immune from suit in her official capacity if the claim concerns conduct that falls within her role as a prosecutor. *D'Alessandro*, 713 F. App'x at 8. "The Eleventh Amendment generally bars suits against a state in federal court."[5] *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam). An ADA acting as a prosecutor is an agent of New York State and therefore receives New York's Eleventh Amendment immunity. *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."); *see also Ying Jing Gan*, 996 F.2d at 529 ("To the extent that [a section 1983] claim is asserted against [a] state official in [her] official capacity, [s]he may assert the state's Eleventh Amendment immunity against suit.").

Here, Ms. Rosenbaum is immune from suit on both grounds. The official-capacity claims against Ms. Rosenbaum are duplicative of Mr. Soley's claims against Nassau County. And because I have found that, in performing the acts at issue, Ms. Rosenbaum was acting within her prosecutorial role, she was acting as an agent of New York State. As such, she is immune from suit in her official capacity under the Eleventh Amendment. I therefore dismiss Mr. Soley's official-capacity claims against Ms. Rosenbaum.

---

[5] "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quotation marks, citation, and alteration omitted). No such congressional abrogation applies here. *See Quern v. Jordan*, 440 U.S. 332, 341–43 (1979) (holding that section 1983 does not abrogate states' sovereign immunity). Nor has New York waived its immunity to suit in federal court. *See, e.g.*, *Dubarry v. Capra*, No. 21-CV-5487 (KMK), 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)); *Feng Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order).

## CONCLUSION

For the reasons set forth above, defendant Rosenbaum's motion for judgment on the pleadings is granted. All claims against her are dismissed.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:  July 26, 2022
        Brooklyn, New York